FILED
2017 Aug-09  AM 09:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| STEELSAFE SHELTERS, INC. AND CHRIS WOOD,<br><br>  PLAINTIFFS,<br><br>V.<br><br>JAMES B. PUGH AND<br>PUGH ENGINEERING SERVICES, LLC<br><br>  DEFENDANTS. | CIVIL ACTION NO.:<br>_____ |

## PARTIES, JURISDCITION AND VENUE

1. Plaintiff, SteelSafe Shelters, Inc. ("SteelSafe") is a corporation organized and existing under the laws of the State of Alabama with its principal place of business being in Madison County, Alabama.

2. Plaintiff, Chris Wood ("Wood") is a majority shareholder of the Plaintiff SteelSafe Shelters who resides in Madison County, Alabama.

3. Defendant James B. Pugh ("Pugh") is over the age of nineteen years old and is a resident of Morgan County, Alabama.

4. Defendant Pugh Engineering Services, LLC ("Pugh Engineering") is an Alabama limited liability company, with its principal place of business being in Cullman County, Alabama.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1338 and 28 U.S.C. §1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## FACTS

7. In 2012, SteelSafe and Wood (hereinafter, jointly "Plaintiffs") hired Pugh Engineering and Pugh (hereinafter, jointly "Defendants") on a work made for hire basis to design plans and specifications for the construction of six different shelter models which were ultimately sold by SteelSafe.

8. On or about May 30, 2012, Pugh provided the specially ordered plans and specifications to SteelSafe for the six shelter designs. Also on or about May 30, 2012, SteelSafe paid Pugh for this work which was specially ordered by SteelSafe. The following legend appears on each of the drawings "THIS DRAWING IS THE SOLE PROPERTY OF STEELSAFE SHELTERS AND CAN NOT BE USED OR REPRODUCED FOR DESIGN OR CONSTRUCITON WITHOUT THE WRITTEN PERMISSION OF STEELSAFE SHELTERS". No other restriction or limitation appears on

the design specifications. A true and correct copy of the specifications are attached as Exhibit "A"

9. In addition to the legend regarding ownership the following appears on the drawings: "THIS SHELTER DESIGN COMPLIES WITH THE APPLICABLE STANDARDS AS SET FORTH IN FEMA PUBLICATION 320 (3RD EDITION, AUGUST 2008), FEMA PUBLICATION 361(2ND EDITION, AUGUST 2008), THE NATIONAL PERFORMANCE CRITERIA FOR TORNADO SHELTERS (NPCTS AUGUST 1999, AND THE INTERNATIONAL CODE COUNCIL 500 (ICC 500) REQUIREMENTS".

10. Between May of 2012 and through 2016, SteelSafe, using the plans provided by Pugh, sold numerous residential shelters and cultivated multiple business relationships through which its residential shelters were sold.  One of these relationships was with Lowe's Home Improvement ("Lowe's"). Commencing in 2013, SteelSafe began selling its storm shelters at Lowe's stores and on-line through Lowes.com. throughout the South and Southwest.

11. In approximately May 2016, Plaintiffs contacted Pugh to have him draft plans and specifications for three (3) additional models of shelters.  At that time, Pugh quoted Plaintiffs a price to do the work that was significantly greater than what Plaintiffs had originally paid for the six shelter models.

Additionally, Pugh wanted a monthly retainer fee of $750 per month to do the specially ordered work.  Plaintiffs told Pugh that they could not afford to pay him for the requested services and found another engineer to do the specially ordered work.

12. Thereafter, unbeknownst to Plaintiffs, on July 21, 2016, Pugh registered a copyright with the U.S. Copyright Office for a 6 x 8 garage installed above ground shelter.  The copyright notice shows Pugh as the author and also shows SteelSafe as the copyright Claimant.  A true and correct copy of this registration is attached as Exhibit "B".  Additionally, on July 21, 2016, Pugh also registered with the Copyright Office a copyright for an "X-LRG Installed Below Ground Shelter".  See Exhibit "B".  Furthermore, on July 21, 2016, Pugh also registered with the Copyright Office a copyright for an "Outside Below Ground Shelter".  See Exhibit "B". The registration for the Outside Below Ground Shelter shows Pugh as the author and SteelSafe as the copyright claimant.

13. On or about December 5, 2016, Pugh, through his attorney Rachel Dollins, sent a letter to Lowe's asserting that Pugh held a copyright on the technical drawings for SteelSafe's six and eight person storm shelters.  A true and correct copy of this letter is attached as Exhibit "C".

14. On or about December 15, 2016, Pugh, through his lawyer Rachel Dollins, purportedly sent a letter to SteelSafe informing it, for the first time, that Pugh claimed that the drawings for the storm shelters were the subject of a copyright which he held and that Pugh had not authorized the use of the drawings by SteelSafe in doing business with Lowe's.  True and correct copy of this letter is attached as Exhibit "D".  Plaintiffs deny that they ever received this letter.

15. Subsequently, on January 3, 2017, Pugh, through his lawyer Rachel Dollins, sent another letter to Lowe's asserting that Pugh was the registered copyright holder for the drawings of SteelSafe's 10-person, 8-person, 14-person, and 16-person storm shelters.  Pugh further asserted that SteelSafe's use of the drawings in conjunction with its business with Lowe's violated Pugh's copyright on these drawings. A true and correct copy of this letter is attached as Exhibit "E".

16. On January 11, 2017, Pugh, through his attorney Rachel Dollins, sent a letter to the board of professional engineers for Michigan, and upon information and belief, the boards for the remaining United States, stating that the storm shelters contained incomplete and inaccurate specifications and "[i]n the cases of several shelters, the 'Dimensions Guide', overstated the maximum capacity set by FEMA regulations."  A true and correct copy of this letter is

attached hereto as Exhibit "F". Pugh's assertion that the shelters sold by SteelSafe failed to comply with FEMA regulations was first made in this letter of January 11, 2017.

17. On February 9, 2017, Pugh, through his lawyer Rachel Dollins, sent another letter to the Office of Attorney General Consumer Affairs Division. In this letter, Pugh admits that he was hired by SteelSafe in May 2012, to specially design several storm shelters which it sold to SteelSafe. In this letter, Pugh further alleges that the plans were altered and contain inaccurate capacity limitations which did not comply with FEMA guidelines; that the plans it provided met FEMA guidelines; and that SteelSafe's plans or shelters design was inaccurate and overstated the maximum capacities for occupancy as allowed by FEMA regulations. A true and correct copy of this letter is attached hereto as Exhibit "G".

18. FEMA has adopted the ICC regulations, including ICC 500 Section 502. This regulation states that a residential safe room is defined as a safe room serving occupants of dwelling and having an occupant load not exceeding 16 persons. Furthermore, ICC 500 Section 502.4 requires a minimum of 3 square feet per person for a tornado shelter for one and two family dwellings. "Other Residential" dwellings serving more than 16 people require 5 square feet per person.

19. Below is a chart that shows the square footage requirements for occupancy of a residential safe room designed occupants not exceeding 16 persons:

| Occupancy per SS | SteelSafe Shelter Size | Occupancy per FEMA | Size per Pugh | Occupancy per Pugh |
|---|---|---|---|---|
| 4-6 person | 3 x 6 | 6 | 3 x 6 | 4 |
| 6-8 person | 4 x 6 | 8 | 6 x 8 | 10 |
| 8-10 person | 4 x 7 | 10 | 4 x 7 | 6 |
| 12-14 person | 5 x 8 | 14 | 4 x 7 | 6 |
| 6-8 person above ground | 4 x 6 | 8 | 4 x 6 | 4 |
| 14-16 person | 6 x 8 | 16 | 6 x 8 | 10 |

20. A recent investigation conducted by SteelSafe revealed that all of the residential storm shelters which it advertised for sale met FEMA and ICC guidelines. During this investigation SteelSafe discovered that Lowe's had advertised on-line a "10 person" shelter and a "14 person shelter" for sale and that two of these shelters had been sold. Both of these residential shelters were within .666 feet of compliance with FEMA and ICC regulations. Thus, 99% of the residential storm shelters sold by Plaintiffs met the technical FEMA and ICC requirements and 100% of the storm shelters met the substantial requirements of both the ICC and FEMA.

21. Despite the fact that this information was readily available to Pugh and his attorney, Pugh through his attorney on more than one occasion asserted that

SteelSafe had provided inaccurate information to Lowe's concerning the FEMA standards and called into question the safety of the residential storm shelters.

22. On March 17, 2017, SteelSafe was notified by Lowe's that it was removing all of the SteelSafe residential storm shelters from its stores and ceased advertising them for sale on its Lowes.com website. Moreover, Lowe's directed SteelSafe to remove all mention of "Lowe's" on SteelSafe.com. Lowe's actions were a direct result of the letters sent out by Pugh to the Attorney Generals throughout the United States.

## COUNT I

23. Plaintiffs reallege and incorporate all material allegations set forth in the preceding paragraphs above as if fully stated herein.

24. This is an action for declaratory relief as to the ownership of copyright to the designs, plans, and specifications for the shelters sold by SteelSafe pursuant to 28 U.S.C. 2201.

25. A substantial controversy exists between SteelSafe and Pugh as to the ownership of the copyrights for the shelters. As stated above, SteelSafe hired Pugh on a work made for hire basis and paid Pugh for the shelter drawings which were specially ordered by SteelSafe. It is clear that the drawing were developed for the sole benefit of SteelSafe because Pugh put

the following legend on the drawings:  THIS DRAWING IS THE SOLE PROPERTY OF STEELSAFE SHELTERS AND CAN NOT BE USED OR REPRODUCED FOR DESIGN OR CONSTRUCITON WITHOUT THE WRITTEN PERMISSION OF STEELSAFE SHELTERS.

26. For more than four years from the date that SteelSafe acquired the drawings from Pugh, it sold the shelters in interstate commerce.  Prior to November 2016, Pugh never reserved any rights in the drawings and never attempted to restrict SteelSafe's use of the drawings. Indeed, SteelSafe was free to destroy or discard the drawings as it saw fit.  Moreover, Pugh never stated that SteelSafe's use of the drawings was subject to a license. In fact, any such efforts by Pugh are directly contrary to the express legend Pugh put on the drawings.

27. Upon information and belief, Pugh has taken actions which have created a reasonable belief on the part of SteelSafe that Pugh claims a copyright in the drawings.  The actions taken by Pugh include the registration by Pugh of a copyright for the drawings with the United States Copyright Office and the issuance of statements through his counsel that Pugh is the registered owner of the copyrights for the drawings.

28. Thus, there exists a substantial controversy between the parties having adverse legal interests in the drawings of sufficient immediacy to warrant the issuance of a declaratory judgment.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court grant it the following relief:

   a. That the Court take jurisdiction over this matter;
   b. That the Court enter declaratory judgment in favor of Plaintiffs, finding that they are they are the owner of the drawings for the shelters;
   c. That the Court invalidate and void the copyright registrations for the designs filed by Pugh with the United States Copyright Office or alternatively find that SteelSafe is the proper owner of the patents;
   d. That the Court grant them such further and additional relief as to which they are justly entitled.

## **COUNT II**

29. Plaintiffs reallege and incorporate all material allegations set forth in the preceding paragraphs above as if fully set out herein.

30. This is an action for misrepresentations under 17 U.S.C. §512(f).

31. SteelSafe is the owner of the designs to the shelters.  Indeed, even Pugh recognized this fact when he registered the copyrights by acknowledging that SteelSafe is the copyright claimant.

32. Despite this knowledge, Pugh has repeatedly asserted that he is the registered owner of the copyrights to the storm shelter designs and that Plaintiffs had improperly used the copyrighted material through selling the storms shelters via the Lowe's website.

33. Based on the above facts, Pugh knowingly and materially misrepresented that copyright infringement has occurred.  Moreover, Lowe's clearly relied upon these misrepresentations by canceling the sale of the storm shelters and removing them from for sale from its website.

34. Plaintiffs have therefore been in "injured" as a result of Pugh's acts and omissions.

    WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment for compensatory and punitive damages in an amount to be determined at trial, plus the award of attorney fees and costs, as well as such additional relief as to which they are justly entitled.

## **COUNT III**

35. Plaintiffs reallege and incorporate the preceding paragraphs above as if fully set forth herein.

36. This is an action for libel *per se* against Pugh.

37. Pugh and Pugh Engineering have made multiple written statements regarding the Plaintiffs which were false and which Pugh knew were false or the statements were made disregarding the truth when uttering said statements.

38. These include statements by Pugh concerning the Plaintiffs repeated failure to comply with federal regulations regarding FEMA's occupancy regulations for storm shelters and allegations that Plaintiffs did not own the copyrights on the shelters at issue in this case. These written allegations constitute libel *per se* because it imputes fraud and dishonesty on the part of both Wood and SteelSafe and damage to their reputations.

39. The statements made by Pugh had the tendency to injure Plaintiff Chris Wood in his industry because the statements attack Wood's veracity, integrity, competency, and reputation as the owner and president of SteelSafe.  These statements made by Pugh further expose both Wood and SteelSafe to public ridicule and contempt in so far as they imply some form of improper or illegal action.

40. All statements are entirely false as they pertain to Wood and SteelSafe, and are defamatory, libelous on their face, and expose Wood to contempt, ridicule, and obloquy.  These statements were understood by those who read

them in a way that defamed the reputation of Plaintiffs and Wood, particularly, as a hard-working businessman.

41. Upon information and belief, Pugh failed to use reasonable care to determine the truth or falsity of the statements

42. As a proximate result of the above-described statements, SteelSafe and Wood have suffered loss to their reputation, shame, mortification, and hurt feelings, all to their general damages.

43. Upon information and belief, by engaging in the above conduct, Pugh acted with malice, oppression, and/or fraud, entitling Plaintiffs to punitive damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment, against Pugh for all sums as may be properly determined to be due and payable in compensatory and punitive damages together with attorney fees and costs of this action.

## COUNT IV

44. Plaintiffs reallege and incorporate the preceding paragraphs and all material allegations set forth above as if fully set out herein.

45. This is an action for libel *per quod* against Pugh.

46. The Plaintiffs suffered damages as a result of the malicious statements made by Pugh concerning the Plaintiffs. Statements made by Pugh regarding the

lack of ownership over the copyright of the storm shelter designs as well as statements that the shelters did not comply with applicable FEMA regulations were meant to diminish the profitability of SteelSafe, and Pugh either knew they were false or said statements were made recklessly in total disregard for their veracity. All statements are entirely false as they pertain to SteelSafe and Wood, and are defamatory, slanderous on their face, and expose Wood to contempt, ridicule, and obloquy.

47. As a proximate result of the above-described statements, Plaintiffs have suffered damages to include, but are not limited to, lost profits suffered by SteelSafe, as well as a diminished reputation in the industry.

48. Upon information and belief, by engaging in the above conduct, Pugh acted with malice, oppression, and/or fraud, entitling Wood and SteelSafe to punitive damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment, joint and severally, against Pugh for all sums as may be properly determined to be due and payable in compensatory and punitive damages together with attorney fees and costs of this action.

## COUNT V

49. Plaintiffs reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50. This is an action for negligence against the Defendants

51. Since the Defendants prepared the drawings, plans, and specifications to the shelter and specially did so for the Plaintiffs, Defendants had a duty to properly report to the United States Copyright Office the actual owner of the of these drawings.

52. Defendants breached this duty to properly report the ownership in the drawings to the shelter by registering a copyright to at least three of the shelter models which had been specially prepared for the Plaintiffs.

53. Defendants also owed a duty to Plaintiffs to communicate known facts honestly and truthfully regarding the Plaintiffs' business and the residential storm shelters. Defendants breached this duty by communicating to third parties false, inaccurate, and slanderous information.

54. Plaintiffs have suffered damages as a direct and proximate result of the Defendants acts and omissions.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against Defendants for all sums as may be properly determined to be due and payable in compensatory damages together with attorney fees and costs of this action.

## COUNT VI

55. Plaintiffs reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

56. This is an action plead in the alternative for breach of contract.

57. Upon information and belief, at all times material to this complaint, Defendant Pugh Engineering was legally qualified to practice engineering in the State of Alabama and held an unexpired certificate of authorization to practice engineering in the State of Alabama.

58. At all times relevant to this complaint Defendant Pugh Engineering prepared drawings including the plans and specifications for the construction of the storm shelters.  In so doing, Pugh contracted with Plaintiffs and agreed to that the drawings, plans, and specifications for the shelters would comply with FEMA standards set forth in FEMA Publications 320 and 361 and the ICC 500 requirements.

59. Defendants breached this agreement by failing to provide drawings, plans, and specifications for the shelters that complied with these standards.

60. Plaintiffs have been damaged as a consequence of such breach in that they have lost significant profits as a result of the Defendants' default.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against Defendants for all sums as may be properly determined to be due and

payable in compensatory and consequential damages together with the costs of this action.

Respectfully submitted on this the 8th day of August, 2017,

        *s/ Kevin D. Heard*
        Kevin D. Heard
        Bar Number: ASB-4873-E50K
        *Attorney for Plaintiffs*
        HEARD, ARY & DAURO, LLC
        303 Williams Avenue SW
        Park Plaza, Suite 921
        Huntsville, Alabama 35801
        Tel: (256) 535-0817
        Fax: (256) 535-0818
        Email: kheard@heardlaw.com

**Please serve Defendants via certified mail at the addresses below:**

James B. Pugh
335 Peck Mountain Road
Eva, AL 35621

Pugh Engineering Services, LLC
c/o Jacqueline B. Pugh, its Registered Agent
335 Peck Mountain Road
Eva, AL 35621